Denise Kay ANDERSON,
Plaintiff–Appellant,

v.

WOODCREEK VENTURE LTD; James May; Linda Brown; Curtis Brown, Defendants–Appellees.

No. 01–36045.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed Dec. 5, 2003.

Peter B. Camp, Everett, WA, for the plaintiff/appellant.

Timothy C. Gerking, Brophy, Mills, Schmor, Gerking & Brophy, Medford, OR, for the defendants/appellees.

Before LAY,* WALLACE, and TALLMAN, Circuit Judges.

WALLACE, Senior Circuit Judge:

Anderson appeals from a magistrate judge's order denying her motion for a new trial in her action against WoodCreek Venture, Ltd. and three of its employees (collectively, WoodCreek). Because the record casts into doubt whether Anderson voluntarily consented to the magistrate judge's jurisdiction to enter judgment as required by 28 U.S.C. § 636(c)(1), and because our appellate jurisdiction depends on the proper exercise of magistrate judge jurisdiction, *id.* § 636(c)(3), we remand to the district court to determine if Anderson voluntarily consented under subsection (c)(1).

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I.

Anderson and her daughter rented a townhouse unit from WoodCreek under the Department of Housing and Urban Development (HUD)'s tenant-based Housing Choice Voucher Program. By the terms of a HUD addendum to the rental agreement, the Housing Authority of Jackson County, Oregon (Housing Authority), had to approve the composition of the family residing in the unit. The Housing Authority granted approval only for Anderson and her daughter.

In January of 1999, WoodCreek employees reported to the Housing Authority that Anderson had a guest—allegedly identified as Wills, the father of Anderson's daughter—living with her for more than seven days in violation of the rental agreement. Anderson was subsequently served with a notice that Wills must vacate the premises or fill out an application and be approved to live in the unit. Without responding, Wills and Anderson, along with their daughter, left on a trip to California and were gone for more than a week. In their absence, WoodCreek employees entered Anderson's unit without permission, supposedly out of a concern that they had not heard from Anderson in over a week. They also sent her a Notice of Termination for the alleged breach of her lease agreement.

On March 1, 1999, Anderson and Wills filed, pro se, an action in the District of Oregon alleging that WoodCreek attempted to evict Anderson and limit other dwelling privileges based on Anderson and Wills's race, color, and gender in contravention of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601–3631, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982. They also accused WoodCreek of violating Anderson's Fourth Amendment rights by entering her home without permission.

On the same day the action was filed, the District Court Clerk's Office issued its "Notice to Counsel Regarding Assignment of Presiding Judicial Officer" (Notice Form). The Notice Form designates assignment of the case to "Honorable John P. Cooney, U.S. Magistrate Judge," and explains in part: "The above referenced case has been assigned to the presiding judicial officer shown below for disposition, to include the conduct of trial and/or entry of final judgment. 1" The marker "1" does not correspond to an enumerated footnote, but at the bottom of the page where footnote text normally appears the Notice Form states:

> Cases initially assigned to a United States Magistrate shall be administered by that judge, to include the scheduling of all discovery matters, and with the consent of the parties, the conduct of trial and/or entry of final judgment. Pursuant to Fed.R.Civ.P. 73, all full-time United States Magistrates in the District of Oregon have been certified to exercise civil jurisdiction in assigned cases, to include trial and entry of final judgment. Appeals from the entry of such judgments go directly to the United States Court of Appeals for the Ninth Circuit, *not* to a trial de novo before a district judge. Therefore, parties are strongly encouraged to file a *Consent to Trial and Entry of Final Judgment* [See Fed.R.Civ.P. 73(b)].

In response to the Notice Form and WoodCreek's Motion to Dismiss/Motion to Make More Definite and Certain, Anderson and Wills filed their first post-Notice Form pleading on March 23, 1999. The document contained three statements in its caption: "Opposition to Defendants[sic] Motion To Dismiss and Plaintiffs [sic] Motion for Leave To Amend Complaint," "Plaintiffs Deny Magistrates [sic] Jurisdiction," and "Plaintiffs [sic] Motion

for Summary Judgment." The text stated in part: "Plaintiffs Wills and Anderson do hereby deny Magistrates [sic] jurisdiction." Notably, both parties needed to consent to the magistrate judge's authority to enter judgment for the magistrate judge to have jurisdiction over WoodCreek's motion to dismiss and Anderson and Wills's summary judgment motion. As of this point, however, only WoodCreek had filed the District of Oregon's form "Consent to Jurisdiction by a United States Magistrate Judge and Designation of Normal Appeal Route" (Consent Form).

Anderson and Wills's next pleading was filed May 27, 1999, and was titled in part "Plaintiffs Motion To Deny Magistrates [sic] Jurisdiction" and "Opposition To Defendants [sic] Motion To Remove Plaintiff, Jim Dandy Wills Jr., As a Party." Once again, both parties were required to consent before the magistrate judge could rule dispositively on WoodCreek's motion to remove Wills. Anderson and Wills continued to hold out, announcing in the text of this pleading that "[p]ursuant to Fed. R.Civ.P. 73[,] Plaintiffs do hereby deny Magistrates [sic] Jurisdiction and move the Court to assign a Federal District Court Judge to this instant case."

On June 18, 1999, Magistrate Judge Cooney referred the motion to deny his jurisdiction to district court Judge Michael R. Hogan for consideration and stayed the case pending Judge Hogan's decision. Judge Hogan issued a terse ruling on June 22, 1999: "This court having considered 'Plaintiffs Motion To Deny Magistrates Jurisdiction' (# 17) in this matter, IT IS HEREBY ORDERED that plaintiff's motion is denied." No reference was made to WoodCreek's motion to dismiss, WoodCreek's motion to remove plaintiff Wills, or Anderson and Wills's summary judgment motion.

Nothing further occurred until July 13, 1999, when Anderson, allegedly anxious her case would sit inactive unless she consented to the magistrate judge's jurisdiction, filed, along with Wills, Consent Forms. The magistrate judge dismissed Wills from the suits and WoodCreek eventually prevailed in a jury trial. Anderson filed a motion for a new trial, arguing in part that her consent to magistrate judge jurisdiction was involuntary. Magistrate Judge Cooney denied this motion on October 23, 2001, whereupon Anderson filed this appeal.

## II.

Anderson renews her involuntary consent argument before us. As this argument bears on our jurisdiction to hear her appeal, we consider it first.

The relevant sources of appellate jurisdiction over final orders issued by magistrate judges reside principally in two statutory provisions. The section directly providing for jurisdiction on appeal reads in part:

> Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. *The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment* of the district court in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 636(c)(3) (emphasis added). The "paragraph (1)" reference in section 636(c)(3) is to section 636(c)(1), the provision affording the magistrate judge jurisdiction. It states in part that "[u]pon the

*consent* of the parties, a full-time United States magistrate judge ... may conduct any or all proceedings in a jury or nonjury civil matter *and order the entry of judgment in the case,* when specially designated to exercise such jurisdiction by the district court." *Id.* § 636(c)(1) (emphasis added); *see also* Fed. R. Civ. P. 73 (establishing the procedures contemplated by section 636(c)). Our appellate jurisdiction therefore depends on the magistrate judge's lawful exercise of jurisdiction, *Nasca v. Peoplesoft (In re Marriage of Nasca),* 160 F.3d 578, 580 (9th Cir.1998) (holding that the magistrate judge's "lack of jurisdiction *a fortiori* deprives this court of appellate jurisdiction"), which in turn depends on proper district court designation and the voluntary consent of the parties to entry of judgment by the magistrate judge, *Estate of Conners by Meredith v. O'Connor,* 6 F.3d 656, 659 (9th Cir.1993) (holding that "because the magistrate did not [obtain party consent] to enter a final order, the defendants' notice of appeal from that order was a nullity"); *see also Roell v. Withrow,* 538 U.S. 580, 123 S.Ct. 1696, 1707, 155 L.Ed.2d 775 (2003) (Thomas, J., dissenting) ("Absence of consent means absence of 'judgment,' which, in turn, means absence of appellate jurisdiction.").

Consent thus emerges from the statute as the touchstone of magistrate judge jurisdiction. Subsection (c)(3), in addition to referring to subsection (c)(1), expressly reinforces its insistence on consensual designation of a case to a magistrate judge for disposition. This statutory structure was designed by members of Congress who explicitly considered voluntary consent imperative. For example, the Senate Committee on the Judiciary stated when recommending passage of the Federal Magistrate Act of 1979 (the bill enacting most of 28 U.S.C. § 636(c)'s current text) that

some ... have expressed concern that the designation of certain classes of cases for trial before magistrates ... might subtly coerce litigants into consenting in those cases. The bill clearly requires the voluntary consent of the parties as a prerequisite to a magistrate's exercise of the new jurisdiction. The committee firmly believes that no pressure, tacit or expressed, should be applied to the litigants to induce them to consent to trial before the magistrates.

S. Rep. No. 96–74, at 13 (1979), *reprinted in* 1979 U.S.C.C.A.N. 1469, 1481; *see also* H.R. Rep. No. 96–287, at 13 (1979) ("The bill makes clear that the knowing and voluntary consent of the parties is required before any civil action may be referred to a magistrate; no coercion will be tolerated."); H.R. Conf. Rep. No. 96–444, at 7–8 (1979), *reprinted in* 1979 U.S.C.C.A.N. 1487, 1488–89 ("[T]he voluntary consent of the parties is required before a civil action may be referred to a magistrate for a final decision."); S. Conf. Rep. No. 96–322, at 7–8 (1979) (same).

The voluntary consent requirement was designed to assuage constitutional concerns, as Congress did not want to erode a litigant's right to insist on a trial before an Article III judge. *See Dixon v. Ylst,* 990 F.2d 478, 479 (9th Cir.1993) ("A party to a federal civil case has, subject to some exceptions, a constitutional right to proceed before an Article III judge."), *citing Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d 537, 541 (9th Cir.1984) (en banc). The House of Representatives Committee on the Judiciary reported that consent to both the magistrate judge and his or her entry of final judgment was a primary factor of "a solid constitutional foundation for creation of the Federal magistrates system." H.R. Rep. No. 96–287, at 8; *see also* S. Rep. No. 96–74, at 4, *reprinted in* 1979

U.S.C.C.A.N. at 1473 ("In light of this requirement of consent, no witness at the hearings on the bill found any constitutional question that could be raised against the provision."); 125 Cong. Rec. 26822 (1979) (statement of Rep. Robert Kastenmeier) (rebuffing a constitutional challenge to the bill by arguing in part that "the magistrates' jurisdiction is entirely consensual. If any party ... does not care to have his or her case heard by a magistrate, there is no compulsion to do so."); H.R. Rep. No. 96–287, at 31 (dissenting views of Rep. Elizabeth Holtzman) (opining that the legislation fosters too great a risk of coerced consent for it to pass constitutional muster). Congress's wise decision to include a robust voluntary consent prerequisite resulted in judicial approval of the legislation. We held that "in light of the statutory precondition of voluntary litigant consent and the provisions for the appointment and control of the magistrates by Article III courts, the conduct of civil trials by magistrates is constitutional." *Pacemaker Diagnostic Clinic of Am.*, 725 F.2d at 540.

The statutory backdrop described above has prompted us to pronounce "that a clear and unambiguous expression of consent is required to vest the magistrate with authority under subsection (c)," *Alaniz v. Cal. Processors, Inc.*, 690 F.2d 717, 720 (9th Cir.1982) (per curiam), and that such consent be "explicit." *In re San Vicente Med. Partners*, 865 F.2d 1128, 1131 (9th Cir.1989); *see also Kofoed v. Int'l Bhd. of Elec. Workers, Local 48*, 237 F.3d 1001, 1004 (9th Cir.2001) ("Where the magistrate judge has not received the full consent of the parties, he has no authority to enter judgment in the case....").

The Supreme Court's recent decision in *Roell v. Withrow*, 538 U.S. 580, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003), does little (at least in a case such as this) to diminish our precedent's stringent requirement that litigants clearly indicate their consent and that such consent be voluntary. *Roell* held that voluntary consent could be implied in limited, exceptional circumstances. *Id.* at 1703 n. 7. In *Roell*, the parties' behavior "clearly implied their consent"; "the record shows that [they] voluntarily participated in the entire course of proceedings before the Magistrate Judge[ ] and voiced no objection when, at several points, the Magistrate Judge made it clear that she believed they had consented." *Id.* at 1700.

### III.

We review de novo whether a magistrate judge has jurisdiction. *United States v. 5145 N. Golden State Boulevard*, 135 F.3d 1312, 1314 (9th Cir.1998). Anderson is confronted initially by the fact she signed the Consent Form. The form asserts in part that "[p]ursuant to Fed. R.Civ.P. 73(b), the undersigned party ... hereby consent[s] to have a United States Magistrate Judge conduct any and all proceedings in the case, including trial, and order the entry of final judgment." As a general proposition, filing the signed form would provide a clear, unambiguous, and explicit expression of consent, and thus would suffice to confer magistrate judge jurisdiction under section 636(c). What we observe in this case, however, cannot accurately be deemed clear, unambiguous, and explicit, nor can consent be implied as in *Roell.*

### A. Notice of Assignment to Magistrate Judge

The initial factor leading us to question the voluntariness of Anderson's consent is the Notice Form. The notice is not to the parties but to "counsel" and, of course, Anderson had none and could not be expected to understand the notice as would its designated recipient: "counsel." Its

relevant clause bears repeating in full: "The above referenced case has been assigned to the presiding judicial officer shown below *for disposition, to include the conduct of trial and/or entry of final judgment*" (emphasis added) (footnote marker omitted). This provision, standing alone, permits only one reading: that the magistrate judge assigned to the case is to dispose of it, including entry of final judgment. But that cannot be ordered without *prior* consent. How does the Notice Form attempt to circumvent this obvious reading? The somewhat contradictory paragraph at the bottom of the page tempers the language's conclusiveness (presuming one follows the dead-end footnote marker to it) by averring that "with the consent of the parties, the conduct of trial and/or entry of final judgment" will be administered by the assigned magistrate judge. The reference to Rule 73(b) of the Federal Rules of Civil Procedure also attempts to modify the Notice Form's plain statement that the magistrate judge is assigned to make the final entry of judgment in the case, although a naked citation without the Rule's actual text does so indirectly. But then, it is specifically stated to be a notice to counsel who presumptively knows what Rule 73(b) says.

Read as a whole, the paragraph at the foot of the page does not completely clarify the Notice Form's earlier unqualified assignment of Anderson's case for full and final disposition. At the very least, the Notice Form is ambiguous as to whether the assignment is partial and unclear on whether full magistrate judge jurisdiction is contingent upon the parties expressing their voluntary consent.

## B. Proceedings Before the Magistrate Judge and District Judge

It is evident from the record that the magistrate judge, as well as the district court, did not mitigate any confusion the Notice Form may have sparked; *their response* to Anderson's objections only seemed to compound it. Anderson's first post-Notice Form pleading opposed WoodCreek's motion to dismiss and moved for summary judgment. As both motions are among those upon which a magistrate judge cannot, on mere designation by the district court, issue a dispositive order, 28 U.S.C. § 636(b)(1)(A), an "order [for the entry of judgment" on either motion would require the parties' prior consent.] *Id.* § 636(c)(1). Anderson and Wills's refusal was obvious: their pleading caption stated in part "Plaintiffs Deny Magistrates Jurisdiction," and they stated in the text that "Plaintiffs Wills and Anderson do hereby deny Magistrates [sic] jurisdiction." Clearly, there was a proper objection to magistrate judge jurisdiction, and there was no judicial response.

The next round of pleadings paralleled the previous one. This time, WoodCreek moved to remove Wills as a party, another motion on which an Article III judge must ultimately rule unless the parties consent otherwise. But there was no consent. On the contrary, Anderson and Wills again resisted. Their opposition included in the caption "Plaintiffs [sic] Motion To Deny Magistrates [sic] Jurisdiction" and declared in text that "[p]ursuant to Fed. R.Civ.P. 73[,] Plaintiffs do hereby deny Magistrates [sic] Jurisdiction and move the Court to assign a Federal District Court Judge to this instant case." A pattern emerges: the motions on which WoodCreek requested a ruling entailed entry of judgment, and hence required the parties' prior consent; nonetheless, Anderson and Wills unequivocally refused to submit them to the magistrate judge's jurisdiction.

We pause to make an additional critical observation: Anderson and Wills cite Rule 73 in their motion requesting magistrate

judge jurisdiction and requesting an Article III judge. Rule 73 implements the procedural protections envisioned in 28 U.S.C. § 636(c), and therefore only addresses the prerequisites of a magistrate judge-conducted *trial* or magistrate-issued *dispositive order.* Notwithstanding subsection 636(c), the magistrate judge's jurisdiction over any *pretrial nondispositive* matters, including magistrate-recommended dispositions, is not contingent on litigant consent, 28 U.S.C. § 636(b)(1), and Rule 72, not 73, codifies the attendant procedures. Significantly, then, Anderson and Wills's citation of Rule 73, and not Rule 72, demonstrates they were challenging the magistrate judge's authority under subsection (c) to conduct their trial and subsequently enter judgment, not the nondispositive pretrial matters of subsection (b)(1). This is not surprising, given the Notice Form itself only cited Rule 73 and is far from clear that the assigned magistrate judge's jurisdiction is to be confined, at least until the parties consent, to nondispositive matters.

The magistrate judge's referral of the motion to the district court and the district court's corresponding denial are not responsive to this nuance. To recapitulate, the magistrate judge simply states he is "[r]eferring Plaintiff's Motion to Deny Magistrate's Jurisdiction to Judge Michael R. Hogan for further action. This case is stayed pending Judge Hogan's ruling." The district court's order, issued four days later, is equally unresponsive: "This court having considered 'Plaintiffs Motion To Deny Magistrates Jurisdiction' (# 17) in this matter, IT IS HEREBY ORDERED that plaintiff's motion is denied." Neither ruling gives any indication of the extent to which it is upholding the magistrate judge's jurisdiction. Both fail to specify whether the orders simply permit the magistrate judge to continue considering nondispositive matters (i.e., those covered

by Rule 72 and 28 U.S.C. § 636(b)(1)) or whether the magistrate judge is being given a green light to conduct a full-fledged trial and order entry of the corresponding judgment (i.e., proceedings governed by 28 U.S.C. § 636(c) and Rule 73).

WoodCreek contends the order was limited to 28 U.S.C. § 636(b) and consequently had no effect on the magistrate judge's potential subsection (c) authority to dispose of the case. That strikes us as a particularly attenuated assertion. Since Anderson and Wills's motion, albeit itself not a model of specificity, referred to Rule 73 exclusively, we would think that the district court judge's ensuing order would somehow indicate that he is treating their motion under Rule 72 and/or subsection (b)(1) if that in fact was the case. Moreover, there was little on the docket on which the magistrate judge could rule without the parties' consent. The only nondispositive motions before him were WoodCreek's motion to make more definite and certain (itself an alternative to its motion to dismiss) and Anderson and Wills's corresponding motion for leave to amend their complaint.

It is apparent that the district judge had before him a Rule 73 challenge to the magistrate judge's jurisdiction to enter a final judgment without party consent. In ruling on Anderson's motion for new trial, the magistrate judge attributes the district court's denial to Anderson's failure to set forth "extraordinary circumstances" that would permit the district court, pursuant to Rule 73(b), to "vacate a reference of[this] civil matter to a magistrate judge under this subdivision." FED. R. CIV. P. 73(b); *see also* 28 U.S.C. § 636(c)(4) (same). Although the magistrate judge identifies what seems to be the relevant Federal Rule of Civil Procedure, he plucks from it a clearly inapplicable clause. Anderson was not moving the court to

*vacate the reference* to the magistrate judge for entry of judgment, but rather was trying to thwart reference of the case to the magistrate judge in the first place. *Cf. Dixon,* 990 F.2d at 480 (determining magistrate judge had jurisdiction because the plaintiff had filed proper consent initially and made no subsequent motion to withdraw consent or showing of extraordinary circumstances). Whether Anderson set forth any "exceptional circumstances" is completely inapposite.

Anderson did not appeal from the district court order. Any erroneous denial is relevant only as it may impact the consent issue. But clearly, under any scenario, the end product is by no means tailored as WoodCreek and the magistrate judge's ruling suggest. There simply was no indication that the district court's order denying Anderson and Wills the opportunity to proceed before an Article III judge encompassed anything less than her and his lawsuit in its entirety.

We are similarly troubled by the failure of the magistrate judge and district court judge to "advise[Anderson] that [she was] free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2). This mandatory requirement is triggered when a party is advised a second time of the availability of a magistrate judge. Here, the first offer of a magistrate judge was in the Notice Form. Anderson rejected the offer. Now the district judge, in effect, is once more offering the services of the magistrate judge over Anderson's protest. Was the judge required to advise Anderson specifically that she could withhold her consent with no adverse substantive consequences?

This omission of advice is troubling, given that the judicial action barely comports with subsection (c)(2), if it comports at all. Had the district court and/or magistrate judge clarified that the only proceedings subject to the magistrate judge's jurisdiction were those under subsection (b)(1) and "again advise[d] the parties of the availability of the magistrate judge" to order the entry of judgment in the case, the district court and/or magistrate judge would have been charged with the affirmative duty to "advise the parties that they are free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2). The magistrate judge and district judge effectively evaded subsection (c)(2)'s obligation by remaining silent instead of making a second advisement. We also observe that the magistrate judge's and district court's potentially misleading silence is in tension with the directive that "[r]ules of court for reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent." *Id.*

We need not decide whether the facts of this case present the functional equivalent of action that triggers the required advice. We leave that for another day, but we do consider this episode in our analysis of whether Anderson freely consented to magistrate judge jurisdiction.

## C. Implied Consent

As a final consideration, we do not infer voluntary consent in this case as the Supreme Court permitted in *Roell v. Withrow.* In *Roell,* the parties "clearly implied their consent" when they "voluntarily participated in the entire course of proceedings before the Magistrate Judge[ ] and voiced no objection when, at several points, the Magistrate Judge made it clear that she believed they had consented." *Roell,* 538 U.S. at ——, 123 S.Ct. at 1700. Anderson's persistent resistance to the magistrate judge's jurisdiction falls well short of "clearly implying" consent. In fact, Anderson more closely fits the profile of a party from whose actions the Supreme

Court strongly suggested it would not infer consent. Anderson was not "a litigant[ whose] initial act [was] appearing before the magistrate judge and submitting to her jurisdiction"; instead, Anderson "insist[ed] on trial before a district judge." *Id.* at 1702 n. 5.

### IV.

Lastly, we come to the Consent Form Anderson finally signed when her plea to the district court was rejected. Is this Consent Form sufficient to be considered a voluntary renunciation of her right to have her case heard by an Article III judge? Even here, Anderson is required to sign as if she were a party's lawyer. Similar to the Notice Form directed to "counsel," the Consent Form does not expressly "advise [Anderson] that [she was] free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2); Fed. R.Civ.P. 73(b).

■ It is not unlikely, considering the aggregation of factors outlined above, that a pro se litigant in Anderson's position would think the district court's order foreclosed the opportunity to withhold consent. That is, Anderson very well might have felt compelled to manifest "consent" to the magistrate judge's authority to enter judgment if her lawsuit were ever to proceed to trial. This is what she alleges. Nonetheless, although the events leading up through the district court's denial of Anderson's motion to deny magistrate judge jurisdiction raise a strong possibility that Anderson did not voluntarily consent, the record from the district court's ruling forward, including the magistrate judge's cursory treatment in his post-trial order, is not sufficiently developed for us to determine if the consent was voluntary. *See Pacemaker Diagnostic Clinic of Am.,* 725 F.2d at 546 ("Continued and vigilant supervision by Article III judges is of course essential to the integrity of the system, and they must be careful to guard against any compulsion to induce consent through the imposition of costs, delays, or other penalties which would be incompatible with the ... conclusion that the consent of the parties is essential to the constitutionality of the Act."). We therefore remand to the district court to determine whether Anderson voluntarily consented to proceed to judgment before the magistrate judge as section 636 requires in order to provide the magistrate judge, and hence us, with jurisdiction. Accompanying our remand is the instruction that should the district court find that the purported consent does not satisfy the voluntariness threshold imposed by Congress in section 636(c), the judgment entered by the magistrate judge is to be vacated. If not vacated, Anderson may proceed with her appeal.

REMANDED.