**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEVEN HAIRL WILHELM,
          *Plaintiff-Appellant,*

                v.

DR. ARON ROTMAN; DR. CALVIN
SCHUSTER, and DR. JEAN PIERRE,
          *Defendants-Appellees.*

No. 11-16335

D.C. No.
1:10-cv-00001-GBC

OPINION

Appeal from the United States District Court
for the Eastern District of California
Gerald B. Cohn, Magistrate Judge, Presiding

Argued and Submitted
April 17, 2012—San Francisco, California

Filed May 25, 2012

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

5843

## COUNSEL

Ivana Cingel, O'Melveny & Myers LLP, Los Angeles, California, for the plaintiff-appellant.

Vickie P. Whitney, Supervising Deputy Attorney General, Sacramento, California, for amicus curiae Attorney General of California on behalf of the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Steven Hairl Wilhelm filed a pro se complaint, under 42 U.S.C. § 1983, against certain prison medical providers—Dr. Aron Rotman and Dr. Calvin Schuster. Plaintiff alleged that the providers' delay in treating his hernia amounted to deliberate indifference to his medical needs, in violation of the Eighth Amendment. At the screening stage, a magistrate judge dismissed the case for failure to state a claim, pursuant to 28 U.S.C. § 1915A. Plaintiff appeals, arguing that his complaint properly stated a claim for relief. Plaintiff also contests the magistrate judge's jurisdiction to dismiss his complaint with prejudice, arguing that he did not consent to jurisdiction by that particular magistrate judge.

We hold that (1) Plaintiff voluntarily consented to the jurisdiction of any magistrate judge, including the one who decided his case; (2) the allegations against Dr. Schuster cannot support a deliberate indifference claim because they amount to a claim of negligence; and (3) the allegations against Dr. Rotman are sufficient to warrant ordering him to file an answer. Accordingly, we affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL HISTORY

### A. *Plaintiff's Medical History*[1]

---

[1] Because the district court dismissed Plaintiff's complaint without requiring any defendant to file an answer, the stated facts come from his complaint and its supporting documentation. For the purpose of reviewing a dismissal, we accept those facts as true. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Plaintiff was diagnosed with a hernia on October 7, 2005. Over the next three years, until he saw Dr. Rotman, Plaintiff's doctors took no action on that diagnosis. On July 15, 2008, Dr. Rotman confirmed the diagnosis—a double inguinal hernia—and recommended herniorrhaphy surgery. He reiterated that diagnosis and treatment plan following another examination on September 4, 2008.

On September 5, 2008, Dr. Schuster, the prison surgeon, examined Plaintiff. Dr. Schuster noted the three-year-old hernia diagnosis, and he further noted that Plaintiff exhibited a broad bulge on both sides of his groin. Nevertheless, Dr. Schuster diagnosed "no definite hernia." According to Plaintiff, the exam was extremely short in duration—"literally, a two second exam." Though Plaintiff complained of pain, Dr. Schuster provided no treatment plan beyond instructing Plaintiff to return if his pain persisted.

Then, on September 8, 2008, Plaintiff requested another appointment with Dr. Rotman. He received no response. He submitted another request and received a response, but Dr. Rotman did not see him until November 11, 2008. At that appointment, Plaintiff asked for a test, such as an x-ray, MRI, CT, or ultrasound, to confirm the hernia diagnosis. Dr. Rotman refused, stating that those tests would not show a hernia, and he promised to discuss the hernia at Plaintiff's next appointment.

On December 7, 2008, after having received no call for a follow-up, Plaintiff requested another appointment. Again, he received no response and sent another request. Dr. Rotman next saw Plaintiff on December 24, 2008, and again said that he would examine the hernia at Plaintiff's next appointment.

At Plaintiff's next appointment, on January 27, 2009, Dr. Rotman finally reexamined Plaintiff and confirmed the hernia diagnosis, once again recommending surgery. According to Plaintiff, Dr. Rotman also promised to put him on a list to see

a surgeon at Bakersfield Hospital. At another appointment on February 4, 2009, Dr. Rotman reiterated his diagnosis and treatment plan. At a March 26, 2009 appointment, Dr. Rotman responded to Plaintiff's inquiries by advising him to be patient.

On June 25, 2009, Plaintiff filed an appeal with the Health Care Appeals Office of his facility. On July 23, 2009, Plaintiff also sent a letter to a public interest law firm. His appeal was accepted, leading to another visit with Dr. Rotman on August 3, 2009, and another referral to surgery. This time, Plaintiff saw a surgeon on August 19, 2009, and was scheduled for surgery. Plaintiff's brief states that he has since received the surgery.

As a result of his administrative health care appeal and his inquiries to the public interest law firm, Plaintiff discovered that (1) Dr. Rotman's January 27, 2009 referral to surgery had been denied for inadequate documentation, and (2) Dr. Rotman had sent a second referral, on March 26, 2009, but he later cancelled it by reporting that Plaintiff's condition had resolved.

B.   *District Court Proceedings*

Plaintiff filed a § 1983 action at the end of 2009. The court randomly assigned the case to Magistrate Judge Gary S. Austin, and Plaintiff received a form titled "ORDER RE CONSENT OR REQUEST FOR REASSIGNMENT." That form stated:

> This case was randomly assigned to Magistrate Judge Gary S. Austin. Without the written consent of the parties presently appearing pursuant to 28 U.S.C. Sec. 636(c), a magistrate judge cannot conduct all proceedings and enter judgment in this case with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed. If a party declines to

consent and the case is assigned to a district judge, the assigned magistrate judge shall continue to perform all duties as required by Eastern District Local Rule 302.

Accordingly, within 30 days, the parties shall complete and return this form to the court.

The bottom of the form contained two boxes, along with instructions to check and sign in only *one* of the boxes. The first box was titled "*CONSENT* TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE." That box contained text reading:

The undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case.

The second box was titled, "*DECLINE* OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE AND REQUEST FOR REASSIGNMENT TO UNITED STATES DISTRICT JUDGE." That box contained text reading:

The undersigned declines to consent to the United States Magistrate Judge assigned to this case and requests random assignment to a United States District Judge.

Plaintiff returned the form to the court after completing the first box—the one granting consent. Later, the Chief Judge for the Eastern District of California issued an order reassigning the case to visiting Magistrate Judge Gerald B. Cohn for all further proceedings.

Magistrate Judge Cohn screened the complaint under 28 U.S.C. § 1915A[2] and dismissed it for failure to state a claim,

---

[2]That statute provides, in relevant part:

(a) **Screening.**—The court shall review, before docketing, if

with leave to amend. Plaintiff filed an amended complaint. Magistrate Judge Cohn screened the amended complaint and again dismissed for failure to state a claim, this time without leave to amend. Plaintiff timely appeals.[3]

## STANDARD OF REVIEW

"We review de novo whether a magistrate judge has jurisdiction." *Anderson v. WoodCreek Venture Ltd.*, 351 F.3d 911, 915 (9th Cir. 2003). We also "review *de novo* a district court's dismissal of a prisoner complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted." *Hamilton v. Brown*, 630 F.3d 889, 892 (9th Cir. 2011).

---

feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

[3]Because the complaint was dismissed at the screening stage, Defendants were not served and made no appearance. Accordingly, no Defendants appear in this appeal, and no answering brief was filed. But this court granted Plaintiff's motion for appointment of counsel and directed the California Attorney General to appear and participate in the case. The California Attorney General complied with that order by filing an amicus curiae brief, limited to the jurisdictional issue.

DISCUSSION

A. *Jurisdiction*

**[1]** "The Federal Magistrate Act provides that '[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court.' " *Roell v. Withrow*, 538 U.S. 580, 585 (2003) (alterations in original) (quoting 28 U.S.C. § 636(c)(1)). "So far as it concerns full-time magistrate judges, . . . § 636(c)(1)[ ] speaks only of 'the consent of the parties,' *without qualification as to form*, and § 636(c)(3) similarly provides that '[t]he consent of the parties allows' a full-time magistrate judge to enter a final, appealable judgment of the district court." *Id.* at 587 (emphasis added) (footnote omitted) (second alteration in original). Although § 636(c)(2) and Federal Rule of Civil Procedure 73(b) provide "specific referral procedures" for magistrate judges, "a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate judge's 'civil jurisdiction' under § 636(c)(1) so long as the parties have in fact voluntarily consented." *Id.*

**[2]** Consent, then, is the "the touchstone of magistrate judge jurisdiction." *Anderson*, 351 F.3d at 914. We are satisfied that Plaintiff voluntarily consented to the exercise of jurisdiction by Magistrate Judge Cohn. Plaintiff unambiguously consented to the jurisdiction of "*a* United States Magistrate Judge" by selecting the "consent" box on the court-provided form. (Emphasis added.) That same form provided an alternative to decline jurisdiction of the particular magistrate judge named on that form (Magistrate Judge Austin). The difference in wording between the "consent" option—covering "a" magistrate judge generally—and the "decline" option—which specifies the randomly assigned judge—supports reading the completed form as expressing consent to

jurisdiction by any magistrate judge (as opposed to an Article III judge).[4] Plaintiff asserts that his consent was limited to the particular judge named in the form's introduction (but not referred to in the text associated with the "consent" option). That reading is incorrect because it ignores the distinction between the two options and because the listing of Magistrate Judge Austin was merely informational; indeed, § 636(c)(2), which provides the procedure for obtaining consent, does not require that the form list the name of the judge. The extra information does not render the consent ambiguous.

Plaintiff can identify only one real defect in the consent form—that the form came from the magistrate judge himself rather than from the clerk, as required by § 636(c)(2) and Federal Rule of Civil Procedure 73(b)(1).[5] Under *Roell*, such a procedural defect, especially one so minor, does not eliminate jurisdiction if voluntary consent is present.

---

[4]The written consent in this case contrasts with the written consent in cases in which courts have limited consent to a particular magistrate judge. *See Kalan v. City of St. Francis*, 274 F.3d 1150, 1151-52 (7th Cir. 2001) (per curiam) (involving written consent that "specified [a particular magistrate judge] by name (as opposed to stating that the parties consented to proceed before 'a' magistrate judge)"); *Mendes Jr. Int'l Co. v. M/V Sokai Maru*, 978 F.2d 920, 921 (5th Cir. 1992) (involving document granting " 'consent to have [a named magistrate judge] conduct any and all further proceedings in the case, including . . . order the entry of judgment' " (ellipsis in original)).

[5]Plaintiff also argues that the form was defective for failing to advise him that he was "free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2); Fed. R. Civ. P. 73(b)(2). But that requirement does not apply to the *first* communication asking a party to state a preference regarding magistrate judge jurisdiction; it applies only to *repeated* communications regarding consent. *See* 28 U.S.C. § 636(c)(2) ("Thereafter, either the district court judge or the magistrate judge may *again advise* the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences." (emphasis added)); Fed. R. Civ. P. 73(b)(2) (titled, "Reminding the Parties About Consenting").

**[3]** Even if Plaintiff's consent were not clear from the consent form itself, in the alternative he impliedly consented to the jurisdiction of Magistrate Judge Cohn. As *Roell* held, a court may infer consent where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." 538 U.S. at 590. Here, the initial form advised Plaintiff of the need for consent and his right to refuse it. At a minimum, he agreed to have Magistrate Judge Austin hear his case. But then he presented his case to Magistrate Judge Cohn without objection, voluntarily amending his complaint after seeking an extension of time to do so. Those facts are sufficient to meet the *Roell* standard for implied consent.[6] To the extent that we have previously held that we can *never* infer consent, we have been overruled by the Supreme Court in *Roell*. *See, e.g.*, *Nasca v. Peoplesoft (In re Nasca)*, 160 F.3d 578, 579 (9th Cir. 1999) ("'We will not permit our jurisdiction to depend on inferences when both the statute and common sense call for precision.'" (quoting *Alaniz v. Cal. Processors, Inc.*, 690 F.2d 717, 720 (9th Cir. 1982) (per curiam))); *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (explaining that a three-judge panel may recognize that a precedent of this court has been "effectively overruled" by a later Supreme Court case).

---

[6]The facts of this case differ from the facts in cases where courts have declined to infer consent under *Roell*. *See Anderson*, 351 F.3d at 915; *Phillips v. Beierwaltes*, 466 F.3d 1217, 1221 (10th Cir. 2006). In *Anderson*, the only notice relating to consent failed to alert the parties of the need to consent, of their right to decline, or of their right to a district judge. *See* 351 F.3d at 912, 916. Furthermore, the parties' appearances in *Anderson* are distinguishable from Plaintiff's actions here. In *Anderson*, the objecting parties appeared before a magistrate judge but repeatedly and "unequivocally refused to submit [their motions] to the magistrate judge's jurisdiction." *Id.* at 916; *see id.* at 913. As noted, Plaintiff failed to object at any time. Similarly, in *Phillips*, the Tenth Circuit refused to infer consent under *Roell* because there was "no notification . . . of the need to consent or the right to refuse consent." 466 F.3d at 1221.

In substantially similar circumstances, the Seventh Circuit reached the same conclusion. *See Stevo v. Frasor*, 662 F.3d 880, 882 (7th Cir. 2011) (involving reassignment from a first magistrate judge to a second). The Seventh Circuit requires consent to § 636(c) jurisdiction to be "on the record, clear, and unambiguous." *Id.* at 883. Under that rule, the Seventh Circuit found such consent with respect to a second magistrate judge by relying, in part, on the objecting party's having "expressly consented in writing" to a first magistrate judge. *Id.* at 884. The court saw some ambiguity as to whether the consent applied to " 'a' magistrate judge generally [or] 'the' magistrate judge specifically," but found that ambiguity insignificant because the objecting party had "impliedly consented to the reassignment to [the second magistrate judge] by proceeding . . . through discovery and summary judgment without objection." *Id.* (citing *Roell*, 538 U.S. at 590-91).[7]

In the wake of *Roell*, the Sixth and Eleventh Circuits also have revised their previously strict consent rules. *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 233-35 & n.3 (6th Cir. 2011) (recognizing that circuit's rule requiring a "clear and unambiguous statement in the record indicating that the parties consented to the exercise of plenary jurisdiction by the Magistrate," but finding implied consent under *Roell* (internal quotation marks omitted)); *Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("Although we have required that consent to a magistrate judge's jurisdiction be express and on the record, the Supreme Court held in [*Roell*] that consent to a magistrate judge's jurisdiction can be inferred from a party's conduct during litigation." (internal quotation marks and citations omitted)).

---

[7]The Seventh Circuit also noted that the original consent form contained the following notice: "Should this case be reassigned to a magistrate judge other than the magistrate judge designated . . . , the undersigned may object within 30 days of such reassignment." *Stevo*, 662 F.3d at 885 (internal quotation marks omitted). We do not read the result in *Stevo* to depend on that kind of notice, which was not given here.

The Fifth Circuit had a long-standing pre-*Roell* rule that " '[c]onsent to trial by a magistrate under section 636(c) cannot be implied.' " *Mendes Jr. Int'l Co. v. M/V Sokai Maru*, 978 F.2d 920, 924 (5th Cir. 1992) (quoting *EEOC v. W. La. Health Servs., Inc.*, 959 F.2d 1277, 1281 (5th Cir. 1992)); *see also Trufant v. Autocon, Inc.*, 729 F.2d 308, 309 (5th Cir. 1984) (per curiam) ("We have held before that such consent must be explicit, and will not be casually inferred from the conduct of the parties." (citing *Glover v. Ala. Bd. of Corr.*, 660 F.2d 120 (5th Cir. 1981))). Although the Fifth Circuit has not squarely addressed *Roell*'s effect on its implied consent rule in a published opinion, we do not think that its pre-*Roell* rule survives because *Roell* itself reversed a Fifth Circuit case in which that court had "reaffirmed its prior holding that '§ 636(c) consent must be express; it cannot be implied by the parties' conduct.' " 538 U.S. at 585 (quoting *Withrow v. Roell*, 288 F.3d 199, 201 (5th Cir. 2002) (citing *W. La. Health Servs.*, 959 F.2d at 1281; *Trufant*, 729 F.2d at 309)). The Fifth Circuit seems to have recognized as much in unpublished decisions. *See, e.g.*, *Marquez v. Woody*, 440 F. App'x 318, 321 n.4 (5th Cir. 2011) (per curiam) (although "Woody did not explicitly consent to proceed before a magistrate judge," "the Supreme Court has held that 'consent can be inferred' " and, "[i]n this case, Woody's conduct indicates that she consented to proceed before a magistrate judge" (quoting *Roell*, 538 U.S. at 582)); *Bejaran v. Cruz*, 79 F. App'x 73, 73 (5th Cir. 2003) (per curiam) ("Although the record does not contain written consent by the defendants to proceed before the magistrate judge as required by 28 U.S.C. § 636(c), we may infer their consent from the record as a whole." (citing *Roell*, 538 U.S. at 586-91)).

**[4]** Accordingly, we hold that Plaintiff consented to have Magistrate Judge Cohn decide his case.

B.  *Dismissal of Plaintiff's Complaint*

Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6). *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citing *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1998), which involved Rule 12(b)(6) dismissal); *see also Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir. 2000) ("This standard, derived from Rule 12(b)(6), also applies to the dismissal of claims under § 1915A."). The Rule 12(b)(6) standard requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Plaintiff filed his complaint pro se. "We construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011) (internal quotation marks omitted). *Iqbal* did not alter the rule that, "where the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks omitted).

**[5]** Plaintiff's § 1983 claim alleges a violation of the Eighth Amendment arising from allegedly deficient medical treatment, on a theory of deliberate indifference to serious medical needs. Our test for deliberate indifference to medical need is two-pronged:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted).

**[6]** Plaintiff's hernia was a serious medical need. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("[The plaintiff's] complaint . . . states a serious medical need. He alleges suffering and pain from his herniated condition and the inability to perform his work at the prison."); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

**[7]** The second prong requires showing:

> (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

*Jett*, 439 F.3d at 1096. More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

**[8]** The deliberate indifference doctrine is limited in scope. "[A]n *inadvertent* failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. *McGuckin*, 974 F.2d at 1060 (internal quotation marks omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in *diagnosing or treating* a medical condition does not

state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." (emphasis added)). Thus, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks omitted).

In *Jett*, we applied our definition of deliberate indifference to reverse a summary judgment rejecting a § 1983 claim. There, the prison doctor recognized the plaintiff's need to see a specialist (in that case, an orthopedist), as evidenced by the prison doctor's own referral, but the plaintiff was not taken to see the specialist for at least six months. *Jett*, 439 F.3d at 1097-98. We concluded that a trier of fact could find that the doctor was aware of the plaintiff's need for treatment and that the doctor's "failure to see [the plaintiff] to ensure [administration of the prescribed treatment] was deliberate indifference to a serious medical condition." *Id.* at 1097.[8]

**[9]** Plaintiff's complaint alleges facts that are materially similar to those in *Jett*, at least as to Dr. Rotman. Dr. Rotman repeatedly diagnosed Plaintiff as suffering from a hernia, and he repeatedly concluded that referral to surgery was neces-

---

[8]*McGuckin* similarly suggests that unnecessary delay in administration of prescribed treatment can amount to deliberate indifference. There, we observed that a delay in treating the plaintiff's condition forced him "to endure over seven months of unnecessary pain" and no explanation was available for a failure to provide the plaintiff with a "CT scan and surgery . . . promptly after his need for those services was unambiguously diagnosed." *McGuckin*, 974 F.2d at 1062. We affirmed summary judgment in favor of the defendants who had prescribed and knew of the need for those services, but only because the plaintiff had failed to show that those defendants had caused the delay. *Id.* at 1062-63. Here, by contrast, Plaintiff alleges that Dr. Rotman caused the delay, and Plaintiff's supporting documentation establishes the plausibility of that allegation.

sary. But Plaintiff failed to receive the prescribed treatment for more than a year, and Plaintiff's complaint and exhibits, taken as true, demonstrate that the delay was attributable to Dr. Rotman's failure to request the referral properly and, more troublingly, his inexplicable cancellation of a second referral request. Those actions and omissions do not represent a mere failure to diagnose or prescribe treatment, and they are not explained by a difference of medical opinion. Dr. Rotman exercised his own medical judgment in diagnosing a hernia and prescribing surgery. Plaintiff's complaint does not allege any failure in those actions; rather, it alleges a deliberate indifference in implementing the prescribed treatment. Accordingly, Plaintiff's allegations against Dr. Rotman are sufficient to meet the low threshold for proceeding past the screening stage.

[10] By contrast, the allegations against Dr. Schuster are directed at a misdiagnosis. Plaintiff alleges that he had a hernia and that Dr. Schuster should have operated on it. But Dr. Schuster decided not to operate because he thought that Plaintiff was not suffering from a hernia. Thus, Dr. Schuster's alleged failure was negligent misdiagnosis, or a disagreement with Dr. Rotman. Therefore, the allegations are insufficient to establish deliberate indifference by Dr. Schuster.

[11] In summary, we reverse the dismissal as to Dr. Rotman and affirm the dismissal as to Dr. Schuster. On remand, the district court shall order service of the complaint on Dr. Rotman.

AFFIRMED in part, REVERSED and REMANDED in part.