**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD LEWIS ASHKER; DANNY TROXELL; GEORGE RUIZ; JEFFREY ANTHONY FRANKLIN; GEORGE FRANCO; GABRIEL RALPH REYES; RICHARD K. JOHNSON; PAUL A. REDD, JR.; LUIS ESQUIVEL; RONNIE N. DEWBERRY, | Nos. 19-15224 19-15359 |
| *Plaintiffs-Appellees/ Cross-Appellants*, | D.C. No. 4:09-cv-05796-CW |
| v. | OPINION |
| GAVIN NEWSOM, Governor of the State of California; MATTHEW CATE; ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; GREG LEWIS, Warden, | |
| *Defendants-Appellants/ Cross-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Robert M. Illman, Magistrate Judge, Presiding

Argued and Submitted May 13, 2020
San Francisco, California

Filed August 3, 2020

Before:  J. Clifford Wallace and Ryan D. Nelson, Circuit
Judges, and James S. Gwin,[*] District Judge.

Opinion by Judge Wallace

---

## SUMMARY[**]

### Prisoner Civil Rights

The panel dismissed a prisoner civil rights appeal and cross-appeal for lack of appellate jurisdiction and remanded for further proceedings.

Plaintiffs Prisoners sued the California Department of Corrections and Rehabilitation and various California state officials (collectively, California) for housing the Prisoners in solitary confinement based solely on their gang affiliation. The parties subsequently negotiated a settlement, which they memorialized in a written agreement (Settlement Agreement).  The district court retained jurisdiction of the action to enforce the Settlement Agreement. Before the Settlement Agreement was set to expire, the Prisoners moved to extend its duration.  A magistrate judge granted the Prisoners' motion on two claims but denied the motion as to a third claim, and extended the Settlement Agreement for one year.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the magistrate judge was not specially designated to enter a final order under section 636(c)(1). Neither the district court judge nor the Local Rules for the Northern District of California specially designated the magistrate judge with authority to enter a final order. Because Article III supervision was lacking, the parties could not appeal from the extension order under section 636(c)(3). The panel therefore could not reach the merits of the appeals. In the interest of judicial economy, the panel remanded to the district court to consider construing the magistrate judge's extension order as a report and recommendation and affording the parties reasonable time to file objections.

## COUNSEL

Jeffrey T. Fisher (argued), Deputy Attorney General; Adriano Hrvatin and Neah Huynh, Supervising Attorneys General; Monica N. Anderson, Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellants/Cross-Appellees.

Jules Lobel (argued), Rachel Meeropol, and Samuel Miller, Center for Constitutional Rights, New York, New York; Carmen E. Bremer, Bremer Law Group PLLC, Seattle, Washington; Anne Cappella, Weil Gotshal & Manges LLP, Redwood Shores, California; Charles F.A. Carbone, Law Offices of Charles Carbone, San Francisco, California; Anne Butterfield Weills, Siegel Yee & Brunner, Oakland, California; Matthew Strugar, Law Office of Matthew Strugar, Los Angeles, California; for Plaintiffs-Appellees/Cross-Appellants.

Paula Mitchell, The Project for the Innocent at Loyola Law School, Los Angeles, California; Alexis Agathocleous, The Innocence Project Inc., New York, New York; Linda Starr, The Northern California Innocence Project, Santa Clara, California;  Alexander Simpson, The California Innocence Project, San Diego, California;

Donald Specter, Margot Mendelson, and Patrick Booth, Prison Law Office, Berkeley, California, for Amici Curiae Former Corrections Officials.

---

## OPINION

WALLACE, Circuit Judge:

This appeal and cross-appeal arise from the magistrate judge's order extending the supervision of the case based on alleged due process violations.[1]  Because the magistrate judge lacked authority to enter the final extension order, we dismiss the appeals for lack of jurisdiction and remand to the district court for further proceedings.

### I.

In this institutional-reform action, Plaintiffs Prisoners (Prisoners) sued the California Department of Corrections and Rehabilitation (CDCR) and various California state officials (collectively, California) for housing the Prisoners in solitary confinement based solely on their gang affiliation. In 2014, the district court certified a class of the Prisoners. The following year, the parties negotiated a settlement,

---

[1] We resolve the appeal from the district court's enforcement and corresponding remedial orders in a concurrently-filed opinion.

which they memorialized in a written agreement (Settlement Agreement). The district court retained jurisdiction of the action to enforce the Settlement Agreement.

The Settlement Agreement outlined how the CDCR would move the Prisoners to the general population. The Settlement Agreement also created a special housing unit for the Restricted Custody General Population (Restricted Custody): those Prisoners posing the greatest safety concerns and who could not be housed with the general population. The Settlement Agreement also limited the time the Prisoners could be housed in solitary confinement, required the CDCR to adhere to regulations on the use of confidential information, required the CDCR to provide the Prisoners with increased opportunities for social interaction, and identified documents for the CDCR to produce during a two-year monitoring period.

To comply with the Settlement Agreement, the CDCR moved the vast majority of the Prisoners out of solitary confinement and into general-population facilities. The CDCR also moved those Prisoners with unique safety concerns to Restricted Custody. The CDCR placed new Restricted Custody inmates on "walk-alone" status for an observation period, when prison staff would evaluate them for placement into an appropriate Restricted Custody group. However, some Restricted Custody inmates remained on walk-alone status due to unmitigated safety concerns.

The parties agreed that the Settlement Agreement would terminate two years after the district court's preliminary approval. However, the Prisoners reserved the right to seek a one-year extension of the Settlement Agreement if they could show that "current and ongoing systemic violations of the Eighth Amendment or the Due Process Clause" existed, either as alleged in the Prisoners' complaints, or as a result

of the CDCR's reforms.   Without an extension, the Settlement Agreement would expire, and the district court would have to dismiss the case.

Before the Settlement Agreement was set to expire, the Prisoners moved to extend its duration.  The Prisoners raised three grounds for the extension.  First, the Prisoners argued that the CDCR violated due process by informing the California Board of Parole Hearings about their prior gang validations for use during parole decisions.  Second, the Prisoners argued that the CDCR violated due process by misusing confidential information in disciplinary proceedings.  Third, the Prisoners argued that the CDCR violated due process through its placement and review procedures for Restricted Custody inmates.

The Prisoners filed the extension motion and an administrative motion to extend the extension motion's briefing schedule with the district court.  But instead of the district court judge, the magistrate judge ruled on the administrative motion.  The magistrate judge also scheduled a hearing on the extension motion.  The parties filed their briefs on the extension motion with the magistrate judge.

Weeks before the district court's scheduled hearing on the extension motion, an unnumbered entry on the docket reflected that the hearing was removed from the district court's calendar.  While the extension motion was pending, the parties asked the magistrate judge to "rule on" the extension motion "in its entirety."  The magistrate judge entered an extension order in January 2019.

The magistrate judge granted the Prisoners' extension motion on the parole-related and misuse claims but denied the motion as to the Restricted Custody claim.   The

magistrate judge therefore extended the Settlement Agreement for one year.

The parties then filed a joint notice with the magistrate judge, stipulating that they had understood the extension order to be a "final order subject to appellate review[.]" Based on that understanding, California appealed from the magistrate judge's extension order on the misuse and parole-related claims, and the Prisoners cross-appealed from the extension order on the Restrictive Custody claim.

While the appeals were pending, California moved to stay the extension order pending appeal. The magistrate judge denied the motion to stay as moot, concluding that the district court was divested of jurisdiction because the extension motion implicated California's right to avoid further proceedings. Indeed, if the magistrate judge would have denied the extension motion, the case would be dismissed.

However, on de novo review, the district court denied California's motion for a stay, holding that the appeals from the extension order did not preclude it from enforcing the extension order. In a footnote, the district court predicted that we would "not accept the parties' attempt to appeal directly to it the magistrate judge's Extension Order." In the district court's view, the extension order "was not issued pursuant to the consent statute," and thus, the appeals from the order "may be defective."

The Prisoners then moved in our court to dismiss California's appeal from the extension order for lack of appellate jurisdiction. We denied the motion without prejudice, allowing the Prisoners to raise the argument again at the merits stage of the appeals. The parties have since

briefed the issue of the magistrate judge's authority to enter the final extension order.

## II.

We have jurisdiction "from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. We review a final order from a magistrate judge "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3). But when a magistrate judge decides a potentially dispositive motion on behalf of the district court, our jurisdiction "depends on the magistrate judge's lawful exercise of jurisdiction." *Allen v. Meyer*, 755 F.3d 866, 867 (9th Cir. 2014), *quoting Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003). Thus, before we may resolve the merits of an appeal from a magistrate judge's final order, we must "review the antecedent question of whether the magistrate judge validly [exercised jurisdiction] on behalf of the district court." *Id.* (citations omitted). We review a magistrate judge's jurisdiction to enter a final order de novo. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1118 (9th Cir. 2012).

## III.

The Prisoners argue that we cannot reach the merits of the appeals because the magistrate judge lacked authority to enter a final extension order. We agree and therefore dismiss the appeals for lack of jurisdiction.

As Article III judges, we "have the task of adjudicating an ever-mounting volume of cases." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 547 (9th Cir. 1984) (en banc) (citation omitted). In its wisdom, Congress "authorized the appointment of . . . magistrate judges, who do not enjoy the protections of Article III, to

assist" us in our work. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938 (2015). "[W]ithout the distinguished service of these judicial colleagues, the work of the federal court system would grind nearly to a halt." *Id.* at 1938–39.

While we share important responsibilities with our esteemed Article I colleagues, we must nonetheless "control the magistrate system as a whole." *Pacemaker*, 725 F.2d at 544. We have upheld the authority of federal magistrate judges to resolve civil cases with the consent of the parties under 28 U.S.C. section 636(c)(1), but only where that authority was subject to "careful supervision by Article III judges." *Id.* at 546. With our supervision, magistrate judges "may serve to strengthen an independent judiciary, not undermine it." *Id.* Allowing magistrate judges "to decide claims submitted to them by consent" thus preserves the separation of powers between the legislative and judicial branches "so long as Article III courts retain supervisory authority over the process." *Wellness Int'l Network, Ltd.*, 135 S. Ct. at 1944. We interpret the Federal Magistrates Act in light of this "structure and purpose." *Gomez v. United States*, 490 U.S. 858, 864 (1989).

"The Federal Magistrate Act of 1979 'authorizes magistrates, when specially designated by the district court, to exercise jurisdiction over civil matters and enter a final judgment in the district court in civil cases, provided the parties consent to the reference.'" *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), *quoting Pacemaker*, 725 F.2d at 540. 28 U.S.C. section 636(c)(1) provides that "[u]pon the consent of the parties," a magistrate judge "may conduct any or all proceedings in a . . . civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court . . . he serves." *Id.* A section 636(c)(1)

referral "gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003).

In turn, section 636(c)(3) authorizes appeals from a magistrate judge's order to the court of appeals in cases "referred under paragraph (1) of this subsection." 28 U.S.C. § 636(c)(3). "The 'paragraph (1)' reference in section 636(c)(3) is to section 636(c)(1), the provision affording the magistrate judge jurisdiction." *Anderson*, 351 F.3d at 913.

Section 636(c)(1) has two jurisdictional parts. *See Parsons v. Ryan*, 912 F.3d 486, 495 (9th Cir. 2018). A magistrate judge may enter a final order if: (1) the parties consent to the magistrate judge's authority; and (2) the district court specially designates the magistrate judge to exercise jurisdiction. *Id.*, *citing Columbia Record Prods. v. Hot Wax Records, Inc.*, 966 F.2d 515, 516 (9th Cir. 1992). We address each jurisdictional part in turn.

The parties do not dispute that they "voluntarily consented to the magistrate judge's jurisdiction." *Id.* We agree. The parties were aware of their right to refuse their consent to magistrate jurisdiction and, earlier in the case, withheld their consent.

But later, the parties participated in many hearings and brief submissions before the magistrate on dispositive matters without objection. Consistent with this show of consent, the parties filed a joint notice after the magistrate judge's decision, memorializing their understanding that the magistrate judge's extension order was a "final order subject to appellate review[.]"

California then appealed from the magistrate judge's extension order.  For their part, the Prisoners cross-appealed from the same order.  Because the parties agreed to "appear before the [m]agistrate [j]udge, without expressing any reservation," we conclude that they consented to the magistrate judge's jurisdiction to enter a final order.  *Roell*, 538 U.S. at 587, 590–91; *see Burnside v. Jacquez*, 731 F.3d 874, 875–76 (9th Cir. 2013).

Although consent is the "touchstone of magistrate judge jurisdiction," *Anderson*, 351 F.3d at 914, a district court must also specially designate a magistrate judge's authority to enter a final order.  *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).  Indeed, the statutory text confirms that "special designation . . . is a jurisdictional concern."  *Hill v. City of Seven Points*, 230 F.3d 167, 168 (5th Cir. 2000).

We have said that "designation [under section 636(c)(1)] generally derives from an 'individual district judge.'" *Parsons*, 912 F.3d at 496, *quoting Columbia Record Prods.*, 966 F.2d at 516–17.  For example, in *Parsons*, the district court had "entered a written order referring the case to [the magistrate judge] and directing the clerk of court to reassign the case." *Id.*  Because the district court had referred the case to the magistrate judge for final judgment, we held that the magistrate judge's "designation was effective." *Id.*

By contrast, the district court in this case did not designate the magistrate judge with authority to enter a final order.  Instead, the district court allowed the magistrate judge to rule on the administrative motion and removed the scheduled hearing on the extension motion from its calendar without saying whether the magistrate judge had the final say.  On this record, we conclude that the district court did not designate the magistrate judge with authority to enter a

final order.  *See Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993) (upholding the magistrate judge's section 636(c)(1) jurisdiction where after the parties consented, "the district court referred the case to the magistrate judge for all further proceedings").

California argues that we may reach the merits of the appeals because the parties had understood the district court to have referred the extension motion to the magistrate judge for a final order.  However, the language in section 636(c)(1) is "inconsistent with a rule permitting the parties effectively to make that designation."  *Hatcher v. Consol. City of Indianapolis*, 323 F.3d 513, 519 (7th Cir. 2003).

California also asks us to "assume" that the special designation requirement has been met, relying on our decision, *Alaniz v. Cal. Processors, Inc*., 690 F.2d 717 (9th Cir. 1982), *overruled on other grounds by Roell*, 538 U.S. at 590.  This, we cannot to do.

*Alaniz* does not control the outcome of this appeal.  In *Alaniz*, we were simply "willing to assume for purposes" of the opinion that special designation had "in fact been made in accordance with the provisions of paragraph (1) of subsection (c)."  *Id.* at 720.  After "assuming that the magistrate was specially designated to exercise subsection (c) jurisdiction," we concluded that there was "no clear and unambiguous statement on the record that the parties consented to that broad authority."  *Id.*  We said that the record had reflected "only a consent to proceed before the magistrate in accordance with [section 636(b)] . . . ."  *Id.*  Thus, "[o]nly the district judge, and not the magistrate" was "empowered to enter final judgment" and our jurisdiction depended on "await[ing] further proceedings below."  *Id.*

It is clear that, in context, we opted not to reach the issue of special designation in *Alaniz* because the parties had not consented to the magistrate judge's jurisdiction. Here, by contrast, the parties clearly consented to the magistrate judge's authority to enter a final order. Unlike in *Alaniz*, the issue of special designation is therefore dispositive to the validity of the magistrate judge's jurisdiction. *Alaniz* also makes clear that where, as here, the strictures of section 636(c)(1) have not been satisfied, only a district court, and not a magistrate judge, may enter a final order. We therefore reject California's contention that a district court may specially designate a magistrate judge with jurisdiction through an ambiguous referral.

To be sure, dismissing the appeals for lack of jurisdiction rewards the Prisoners' gamesmanship. In the proceedings below, the Prisoners consented to the magistrate judge's jurisdiction to enter a final extension order. The Prisoners should not now benefit from the "luxury of waiting for the outcome before denying the magistrate judge's authority." *Roell*, 538 U.S. at 590. But although we do our best to serve the interest of judicial efficiency whenever possible, it is equally important for us to ensure that the "Article III right is substantially honored." *Id.* (citations omitted). We hold that when a magistrate judge assumes authority to enter a final order based on the district court's ambiguous conduct, the Article III right has not been substantially honored.

We also observe that the district court judge confirmed that she did not, in fact, intend to designate the magistrate judge with authority to enter a final order. In enforcing the magistrate judge's extension order, the district court judge said that the extension order "was not issued pursuant to the consent statute [under section 636(c)(3)]." Thus, the district court observed that California's "appeal of the Extension

Order may be defective." We reject California's suggestion to speculate about the district court's subjective intentions to the contrary.

California also suggests that we may reach the merits of the appeals because, in its view, the district court treated the magistrate judge's order as final when it enforced its terms. But even if the district court's enforcement order effectively adopted the substance of the magistrate judge's extension order, that would not supplant the district court's antecedent responsibility to designate the magistrate judge with authority to enter a final order. Nor can we treat the appeals as emanating from the district court's enforcement order because that order was issued after the parties had already filed the appeals. *See Burnside*, 731 F.3d at 875.

California also asserts that we may review the merits of the appeals because the Local Rules for the Northern District of California "specially designate" all full-time magistrate judges, including the magistrate judge in this case, to enter a final order so long as both parties provide their consent. Because the parties here consented to the magistrate judge's authority to enter a final extension order, California insists that we have jurisdiction to resolve the appeals.

We have said that a district court's local rules may provide an avenue for special designation under section 636(c)(1). *See Columbia Record Prods.*, 966 F.2d at 517. We therefore now look at the Civil Local Rules in the Northern District of California (Local Rules).

California contends that Local Rule 72-1 designated the magistrate judge with the authority to enter a final extension order. *See* N.D. Cal. Civ. L.R. 72-1. Local Rule 72-1 provides that "[e]ach Magistrate Judge appointed by the Court is authorized to exercise all powers and perform all

duties conferred upon Magistrate Judges by 28 U.S.C. § 636, by the local rules of this Court and by any written order of a District Judge designating a Magistrate Judge to perform specific statutorily authorized duties in a particular action." *Id*. Examining the plain meaning of Local Rule 72-1, *see Yagman v. Republic Insurance*, 987 F.2d 622, 630 (9th Cir. 1993), we disagree with California for two reasons.

First, the district court did not issue a "written order" designating the magistrate judge with authority to enter a final order. California admits that the district court did not "explicitly refer" the extension motion to the magistrate judge for final resolution. We agree; a notation on the docket removing a scheduled hearing is not a "written order."

Second, under Local Rule 72-1, an individual district court judge must authorize a magistrate judge to perform its "specific statutorily authorized duties" such as entering a final order under section 636(c)(1). N.D. Cal. Civ. L.R. 72-1. But again, the district court judge did not designate the magistrate judge with authority to enter a final extension order. Local Rule 72-1 therefore did not authorize the magistrate judge to enter a final extension order.

California also contends that Local Rule 73-1(b) specially designated the magistrate judge with authority to enter a final extension order. *See* N.D. Cal. Civ. L.R. 73-1(b). Local Rule 73-1(b) says that when a case is assigned to a district court judge, "the parties may consent at any time to the Court reassigning the case to a magistrate judge for all purposes, including entry of final judgment, pursuant to 28 U.S.C. § 636(c)." *Id.* Again, we disagree with California's position for two reasons.

First, Local Rule 73-1(b) requires that the parties' consent be followed by the "*Court reassigning* the case to a

magistrate judge." *Id.* (emphasis added). However, the district court here did not unambiguously assign the magistrate judge with the power to enter a final extension order.

Second, Local Rule 73-1(b) plainly applies only when a "case" is reassigned to a magistrate judge. *Id.* But the district court continues to exercise jurisdiction over this action. The only question before us is whether the district court specially designated the magistrate judge with authority to enter a final extension order. Thus, Local Rule 73-1(b) is inapposite.

In sum, neither the district court judge nor the Local Rules specially designated the magistrate judge with authority to enter a final order. We therefore hold that the magistrate judge lacked jurisdiction to enter the final extension order under section 636(c)(1). *See Hill*, 230 F.3d at 169–70.[2]

We must now "fashion a remedy to undo" the magistrate judge's invalid final extension order. *Allen*, 755 F.3d at 868, *citing United States v. Corrick*, 298 U.S. 435, 440 (1936). We have "a range of options to address the magistrate judge's invalid" final extension order. *Id.* The chosen

---

[2] Although we cannot reach the merits of the appeals under section 636(c)(1), there is nothing about the interlocutory nature of the appeals otherwise depriving us of jurisdiction to resolve the appeals. Under the collateral order doctrine, we could have reached the merits of the appeals had the magistrate judge been specially designated by the district court to enter a final order. *See Parsons*, 912 F.3d at 502–03 (reaching the merits where the parties appealed from an order that was "conclusive" of the "disputed question," that involved "an important issue completely separate from the merits" of the case, and that was "effectively unreviewable on appeal from a final judgment) (citations omitted).

remedy must be based on "the nature and facts of the case." *Id.*

The appeals before us are interlocutory in nature. Since the magistrate judge entered its extension order, the parties' positions on the underlying merits of the extension motion have not changed. There is no good reason for us to vacate the magistrate judge's extension order. Instead, to cure the lack of Article III supervision without causing unnecessary delay in the resolution of the extension motion, we dismiss the appeals and remand to the district court to consider construing the magistrate judge's extension order "as a report and recommendation and afford the parties reasonable time to file objections." *Id.* at 869; *see* 28 U.S.C. § 636(b)(1)(B). Such an option would enhance judicial efficiency and preserve Article III's supervisory role.

IV.

For these reasons, the magistrate judge was not specially designated to enter a final order under section 636(c)(1). Because Article III supervision was lacking here, the parties cannot appeal from the extension order under section 636(c)(3). We therefore cannot reach the merits of the appeals. *See* 28 U.S.C. § 1291. In the interest of judicial economy, we remand to the district court to consider construing the magistrate judge's extension order as a report and recommendation.

**DISMISSED FOR LACK OF JURISDICTION AND REMANDED WITH INSTRUCTIONS. THE PARTIES SHALL BEAR THEIR OWN COSTS.**